LARS T. FULLER (No. 141270)
SAM TAHERIAN (No. 170953)
THE FULLER LAW FIRM, PC
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>ROBERT W. PAYNE<br>EILEEN P. TREMAIN<br><br>Debtors | CASE No. 16-50543-HLB<br><br>Chapter 13<br><br>**DEBTOR'S TRIAL BRIEF**<br><br>Date: August 1, 2017<br>Time: 9:00 a.m.<br>Location: United States Bankruptcy Court,<br>1000 South Main, Room 214<br>Salinas, CA 93901<br>Judge: Hon. H. L. BLUMENSTIEL |

COME NOW Debtors Robert W. Payne and Eileen P. Tremain, and submit this TRIAL BRIEF.

## I. SUMMARY

When Messrs. Payne and LaRiviere terminated their law partnership, the partnership had interest in a commercial building with substantial equity. Furthermore, the partnership had accumulated profits, and an available line of credit.

After termination of the partnership, Mr. LaRiviere charged approximately $80,000 on the line of credit for his own use, and without knowledge or consent from Mr. Payne. He sold the office building, and, in violation of California law, kept approximately half of the $200,000 in

proceeds. He also pocketed $65,000 of accumulated profits – again, in violation of California law.

Naturally, he kept his former partner in the dark about all of these dealings.

None of the facts above are subject to dispute:

When he filed this bankruptcy petition, Mr. Payne believed his only unsatisfied obligation was on the line of credit. The petition, and the schedules therein, therefore, were filed in good faith.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Debtor Robert Payne and creditor F. David LaRiviere were law partners in an intellectual property law firm, LARIVIERE, GRUBMAN & PAYNE, LLP (hereinafter "LGP LLP"). LGP LLP leased office space in a building owned by real estate holding entity, JUSTIN COURT LIMITED PARTNERSHIP (hereinafter "JCLP"). LGP LLP had a 40% interest in JCLP and was the general partner of JCLP. Mr. LaRiviere had an additional 17.13% interest in JCLP.

Due to loss of a major client, LGP LLP was no longer profitable. In 2014 Mr. Payne dissolved the partnership. At the time of dissolution, LGP LLP's tenancy and lease with JCLP had expired. Mr. LaRiviere took charge of all windup operations for LGP LLP through his new law firm, managing all remaining collections, payments on debts, and sale of the main asset, the JCLP building.

Promptly upon Mr. Payne's departure, and without notice to or consent from Mr. Payne, Mr. LaRiviere charged, for Mr. LaRiviere's own use, approximately $80,000 on LGP LLP's line of credit with RaboBank. Messrs. Payne and LaRiviere had both personally guaranteed this line of credit. Mr. LaRiviere told Mr. Payne that the $80,000 cash advance was used to pay off the debts of LGP LLP, or debts that were inextricably intertwined with operations of LGP LLP. Mr. Payne would later discover that almost all of these funds were used by Mr. LaRiviere to launch a new

law firm.

Shortly after LGP LLP terminated operations, Mr. LaRiviere formed a new law corporation, LARIVIERE GRUBMAN, PC (hereinafter "LG PC.") For some two years, LG PC operated out of the same office building in which LGP LLP operated. In late 2015, acting in his capacity as a principal of JCLP, Mr. LaRiviere sought to sell the office building. Escrow closed in January 2016.

Since LGP LLP had a 40% interest in JCLP, LGP LLP received over $201,000 of these funds. Mr. LaRiviere, who was the managing principal of both JCLP and LGP LLP used approximately half of these proceeds to pay down LGP LLP's line of credit, reducing the balance to approximately $300,000. He kept the remaining $101,000 for his own purposes.

Furthermore, as managing principal, Mr. LaRiviere kept Mr. Payne in the dark as to how he used the $80,000 charged on the RaboBank line of credit, and how he disbursed LGP LLP's share of proceeds from sale of the building. According to the law firm's accountant, Mr. LaRiviere additionally kept for his personal use, $65,000 of LGP LLP's accrued profits from LGP LLP.

The retention/distributions of the $65,000 and $101,000 by Mr. LaRiviere to himself were prohibited by Cal. Corp. Code § 16957(a). It provides that "No distribution shall be made by a registered limited liability partnership if, after giving effect to the distribution: (1) The registered limited liability partnership would not be able to pay its debts as they become due in the usual course of business. (2) The registered limited liability partnership's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the registered limited liability partnership were to be dissolved at the time of the distribution, to satisfy the preferential rights of other partners upon dissolution that are superior to the rights of the partners receiving the distribution."

Thus, three sources of LGP LLP funds were available for creditor payments as of the date of the petition filing, but were misappropriated by Mr. LaRiviere:

1. $101,000 retained by Mr. LaRiviere from proceeds from the sale of the JCLP building, of over $200,000 proceeds received (Caruthers memo);

2. $65,000 in proceeds/profits above LGP LLP expenses, retained by Mr. LaRiviere (Caruthers memo); and

3. $80,000 on LGP LLP line of credit charged for the benefit of creditor LG PC

The exact amount charged by Mr. LaRiviere for the benefit of his own corporation was not disclosed in discovery, but it is reasonably easy to calculate. First, LGP LLP admitted that some of the liability on the line of credit was incurred for the benefit of LG PC. (Request For Admission propounded to LGP LLP):

> **REQUEST FOR ADMISSION NO. 2:** Admit that the following item in your Proof of Claim filed in this bankruptcy was at least partially been incurred by LaRiviere Grubman PC: The line of credit remaining to RaboBank in the amount of $212,934.00.
> **RESPONSE TO ADMISSION NO. 2:** Admit
> **REQUEST FOR ADMISSION NO 7:** Admit that the following item in your Proof of Claim filed in the instant bankruptcy was at least partially incurred by LaRiviere Grubman PC: Line of credit remaining to RaboBank interest due of $4,397.20.
> **RESPONSE TO ADMISSION NO. 7:** Admit

Second, LGP LLP's claim for liability to Rabobank is comprised of two components, principal in the amount of $212,934.00, plus interest payment then due of $4,397.20, totaling $217,331.20.

Third, Rabobank's claim at the time of the filing of the petition, was $303,617.35. (This amount was later reduced by an amended POC, reflecting payments made by Mr. LaRiviere.)

Therefore, the difference between the total Rabobank liability, and the portion of the liability claimed by, and therefore attributable to operations of, LGP LLP, is the amount of liability accrued by Mr. LaRiviere and not attributable to LGP LLP.

This amounts to $86,286.15.

In February 2016, facing some $300,000 of liability on the unsatisfied Rabobank line of credit, Mr. Payne filed bankruptcy jointly with his wife Eileen.

At the time Mr. Payne filed bankruptcy, he had every reason to believe that all debts of his old firm had been satisfied, except the line of credit debt of $300,000. First, he was kept in the dark on unpaid debts, as noted below. Second, he knew the closing of the sale would produce over $200,000 to LGP LLP. Third, the handful of known, legitimate, unpaid obligations (e.g., credit card balance,) would easily be covered from building proceeds (and, it turns out, residual profits). Fourth, as discussed below, it was doubtful that any creditors of LGP LLP could pierce the limited liability veil to make claims against him personally. Fifth, even in the very unlikely event that LGP LLP became insolvent, its indemnification rights against Debtor, if any, was limited to 45% of the (*de-minimis*) insolvency.

For these reasons, Mr. Payne believed, in good faith, that he qualified for chapter 13.

Mr. LaRiviere objected to confirmation of the chapter 13 plan, on grounds that the petition was filed in bad faith, and that the Debtors' debts exceed the §109(e) limits. Mr. LaRiviere also filed three proofs of claim, on behalf of himself, LGP LLP, and LG PC[1].

Mr. Payne objected to these proofs of claim on various, grounds. Parties attempted to

---

[1] The Claim on behalf of LG PC is particularly puzzling because Mr. LaRiviere formed this corporation after LGP LLP ceased operations. Mr. Payne had no interest, involvement, or privity of contract with LG PC.

resolve the dispute through BDRP, but were unsuccessful.

The court then issued a scheduling order to hold a trial as to the good faith issue.

### III. LEGAL ANALYSIS

In chapter 13 cases, §109(e) eligibility "should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." *Scovis v. Henrichsen*, 249 F.3d 975 at 982. (9th Cir., 2001). As discussed below, Debtor's schedules were filed in good faith. The proofs of claim filed by Mr. LaRiviere, LG PC, and LGP LLP contain inflated and redundant amounts. Moreover at the time Mr. Payne filed his petition, he had every reason to believe that claims of Mr. LaRiviere and his two entities would be nil.

The claims are discussed below:

LGP LLP:

A declaration of Mr. LaRiviere, attached to the Proof of Claim breaks down the claim of the LGP LLP as follows (copied *verbatim* from the declaration):

1. Total credit card indebtedness in the amount of $19,261.73,
2. 2015 tax preparation fees owed by the partnership of $1,950.00,
3. Line of credit remaining to RaboBank in the amount of $212,934.00,
4. Line of credit remaining to RaboBank interest payment then due of $4,397.20,
5. Rent owed to the partnership's lessor, J.C.L.P. in the amount of $215,091.14.

As a preliminary matter, and without analyzing the details of these items, there are two fundamental issues with this claim.

First, Pursuant to California Corporations Code §16306(c), "a partner in a registered limited liability partnership is not liable …including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations, or liabilities of or chargeable to the partnership …

that are incurred, created, or assumed by the partnership while the partnership is a registered limited liability partnership.

LGP LLP was a registered limited partnership, and Debtor is informed and believes that it remained so until completion of dissolution. If so, then this claim may be barred in its entirety by statute.

Second, although the partnership agreement may have caused Debtor to waive this statutory protection, his liability imposed pursuant to the agreement, is *pro-rata* to his ownership interest, which was 45%. Mr. LaRiviere retained a 55% obligation for all partnership debts.

Therefore, when he filed his petition, Mr. Payne had every reason to believe that if LGP LLP had any indemnification claim against him, it would be at 45% of the deficit of the capital balance.

But, more importantly, as discussed above, when he filed his petition, Debtor had every reason to believe that LGP LLP's liabilities would be paid off from proceeds of the sale of JCLP's real property, or from accumulated profits.

But since Mr. LaRiviere pocketed these monies, leaving LGP LLP insolvent, the claim of LGP LLP needs further scrutiny:

Items 3 and 4 relate to the indebtedness to the RaboBank line of credit. RaboBank was listed on schedule F, and filed a proof of claim for the entire indebtedness. Therefore, these claims of LPG LLP are redundant.

Debtor believes this will not be a disputed issue of fact in trial.

As to item 5, in discovery, Mr. LaRiviere admitted that when LGP LLP dissolved, the lease between LGP LLP on one hand and JCLP on the other hand had terminated, and LGP LLP had no ongoing lease obligation to JCLP, and that the entirety of the rent claim was accrued post dissolution. (Request For Admission to LGP, LLP, Set Number One):

**REQUEST FOR ADMISSION NO. 3:** Admit that as of the date of dissolution of LaRiviere, Grubman & Payne, LLP which occurred on September 14, 2014, no written lease required further payments by said firm.

**RESPONSE TO ADMISSION NO. 3:** Admit

**REQUEST FOR ADMISSION NO. 4:** Admit that the following items in your Proof of Claim filed in this bankruptcy is for alleged lease obligations that occurred after September 2014: rent allegedly owed to the partnership's lessor, JCLP, in the amount of $215,091.14.

**RESPONSE TO ADMISSION NO. 4:** Admit

**REQUEST FOR ADMISSION NO. 12:** Admit that there was no written extension of the lease incurred by LaRiviere, Grubman & Payne, LLP for any period covering 2013 or the years afterward.

**RESPONSE TO ADMISSION NO. 12:** Admit

**REQUEST FOR ADMISSION NO. 13:** Admit that the leasehold of (LGP LLP) was a month-to-month tenancy for all periods after 2013.

**RESPONSE TO ADMISSION NO. 13:** Admit

In fact, the parties agreed by email that LGP LLP's rent obligation terminated as of September 14, 2012. Based upon the above, Debtor believes this will not be a disputed issue of fact in trial.

As to item 1, Mr. Payne had every reason to believe that his former partner would use the $80,000 withdrawal from the RaboBank line of credit, and the $201,000 proceeds from sale of the building to pay off the partnership debts. Having been kept in the dark by his former partner, Mr. Payne had no way of knowing that the partnership's credit card liabilities remained unsatisfied when he filed his petition. (Request For Admission to Mr. LaRiviere, Set Number Three)

**REQUEST FOR ADMISSION NO. 25.** Admit that you did not advise Robert Payne -- at any time after the execution of the agreement to sell the Building and prior to the filing of the Petition (approximately December 2015 through February 26, 2016) -- that a credit card balance owed by LaRiviere, Grubman & Payne, LLP (in the

approximate amount of $19,261.73) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 25:** Admit

As to item 2, the total accountant fees for LGP LLP for 2015 tax preparation services were $2,000. Mr. Payne paid $1,000, which is more than his 45% share. Therefore, Mr. Payne's obligation was more than satisfied. Shortly thereafter, and through LG PC, Mr. LaRiviere paid the accountant $2,000 for LGP LLP's 2015 tax preparation services. When he discovered that Mr. Payne had already submitted $1,000, Mr. LaRiviere instructed the accountant to apply any surplus to tax services for LG PC.

Therefore, LG PC did <u>not</u> pay Mr. Payne's share of the 2015 tax preparation services. Mr. Payne paid it. In fact, he overpaid it. LG PC paid Mr. LaRiviere's share, and received a credit for the balance.

This may be a disputed issue in trial, but an email evidencing it will be introduced as an exhibit.

Moreover, Mr. LaRiviere never advised Mr. Payne that this amount was outstanding at the time the petition was filed. (Request For Admission to Mr. LaRiviere, Set Number Three)

**REQUEST FOR ADMISSION NO. 28.** Admit that you were advised by email in February, 2015 that Robert Payne paid $1,000 toward 2015 accounting fees incurred by LaRiviere Grubman & Payne, LLP, per your e-mailed request of February 3, 2015..

**RESPONSE TO ADMISSION NO. 28:** Admit

**REQUEST FOR ADMISSION NO. 19.** Admit that you did not advise Robert Payne -- at any time after the execution of the agreement to sell the Building and prior to the filing of the Petition (approximately December 2015 through February 26, 2016) -- that a second fee to the accountant for 2015 tax preparation, paid by LaRiviere Grubman P.C. (in the approximate amount of $2,000) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant...

**RESPONSE TO ADMISSION NO. 19:** Admit

**REQUEST FOR ADMISSION NO. 20.** Admit that you did not advise Robert Payne -- prior to execution of the agreement to sell the Building -- that a second fee to the accountant for 2015 tax preparation, paid by LaRiviere Grubman P.C. (in the approximate amount of $2,000) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 20:** Admit

At any rate, when the petition was filed, Mr. Payne had every reason to believe these debts would be satisfied. (Request For Admission to Mr. LaRiviere, Set Number Three)

**REQUEST FOR ADMISSION NO. 9.** Admit that the proceeds payable to LaRiviere, Grubman & Payne, LLP from the close of escrow of the sale of the Building exceeded the amount payable by any LaRiviere Claimant for the combined total of claims regarding the (a) State Franchise Tax Board (in the approximate amount of $800), (b) fees paid to the accountant for 2015 tax preparation, paid by LaRiviere Grubman P.C. (in the approximate amounts of $1,900 and $2,000), (c) the line of credit interest paid (in the approximate amount of $5,155.17), (d) the accrued vacation pay to former employees of LaRiviere Grubman & Payne, LLP (in the approximate amount of $27,389.58), (e) the credit card balance owed by LaRiviere, Grubman & Payne, LLP (in the approximate amount of $19,261.73) and (f) the promissory note executed by LaRiviere, Grubman & Payne, LLP to F. David LaRiviere (in the approximate amount of $21,865.80).

**RESPONSE TO ADMISSION NO. 9:** Admit

LG PC:

A declaration of Mr. LaRiviere is attached to the Proof of Claim of LG PC. This declaration breaks down the claim of LG PC as follows (copied *verbatim* from the declaration):

"(C)ertain indebtedness of Robert Payne was paid by LaRiviere, Grubman, P.C. Those were paid between October, 2014 and February 26, 2016 in the total amount of $117,060.22.

Those include:
1. Accrued vacation time owed to the employees of LaRiviere, Grubman and Payne in the amount of $27,389.58,
2. The 2015 tax preparation of $2,000.00,
3. The Franchise Tax Board payment due on February, 2015 of $800.00,
4. Line of credit interest payment of $5,155.17,
5. Property taxes owed to the lessor of $39,309.53,
6. Rent owed between October, 2014 and January, 2016 paid by the professional corporation in the amount of $42,405.94.

As a preliminary matter, and without analyzing the items above, this claim suffers from two flaws:

First: The claim, on its face, is for monies allegedly paid for LGP LLP's debts. Therefore, the claim is against LGP LLP. Pursuant to California Corporations Code §16306(c), a partner in a registered limited liability partnership is not liable … for debts, obligations, or liabilities of …the partnership … that are incurred (or) created, …by the partnership while the partnership is a registered limited liability partnership. LGP LLP was a registered limited partnership, and Debtor is informed and believes that it remained so until completion of dissolution. If so, then this claim may be barred in its entirety by statute.

Second: To the extent Debtor is liable for any of this claim, it would be *pro-rata* based on his ownership of LLP. Since he held only a 45% interest in the LLP, any valid claims against him as a partner should be pro-rated.

But, more importantly, at the time he filed this bankruptcy, Debtor had every reason to believe he had no liability to LG PC. The items above are elaborated in further detail below:

The two major items are 5 and 6 (property taxes and post-dissolution rent). As to item 5, Mr. LaRiviere, on behalf of GP PC, has admitted that the property taxes were incurred by JCLP, and not LGP LLP. (Request For Admission to GP PC, Set Number One):.

**REQUEST FOR ADMISSION NO. 1:** Admit that the following item in your Proof of Claim filed in the instant bankruptcy was a debt incurred by Justin Court Limited Partnership: Property taxes owed to the lessor of $39,309.53.

**RESPONSE TO ADMISSION NO. 1:** Admit

Moreover, the lease executed between LGP LLP on one hand, and JCLP on the other, does not obligate the tenant to pay property taxes at all. Additionally, Mr. Payne is not a guarantor of the lease. None of these items are expected to be disputed issues of fact in trial.

Finally, the property taxes appear to have been incurred after dissolution of the partnership, and at any rate, should have been paid off at close of escrow. This may or may not be a disputed issue of fact in trial.

Similarly, as discussed above, LGP LLP dissolved in September 2014, and the parties explicitly agreed to terminate rent as of that date. Thereafter, neither LGP LLP nor Mr. Payne had any lessee-lessor liability to JCLP. Debtor believes this will not be a disputed issue of fact in trial.

Moreover, when JCLP sold the building, LGP LLP had sufficient liquidity to satisfy all of these claims. (Request For Admission to Mr. LaRiviere, Set Number Three)

**REQUEST FOR ADMISSION NO. 9.** Admit that the proceeds payable to LaRiviere, Grubman & Payne, LLP from the close of escrow of the sale of the Building exceeded the amount payable by any LaRiviere Claimant for the combined total of claims regarding the (a) State Franchise Tax Board (in the approximate amount of $800), (b) fees paid to the accountant for 2015 tax preparation, paid by LaRiviere Grubman P.C. (in the approximate amounts of $1,900 and $2,000), (c) the line of credit interest paid (in the approximate amount of $5,155.17), (d) the accrued vacation pay to former employees of LaRiviere Grubman & Payne, LLP (in the approximate amount of $27,389.58), (e) the credit card balance owed by LaRiviere, Grubman & Payne, LLP (in the approximate amount of $19,261.73) and (f) the promissory note executed by LaRiviere, Grubman & Payne, LLP to F. David LaRiviere (in the approximate amount of $21,865.80).

**RESPONSE TO ADMISSION NO. 9:** Admit

Further, Mr. LaRiviere admits he never told Mr. Payne about these obligations. (Request For Admission to Mr. LaRiviere, Set Number Three)

**REQUEST FOR ADMISSION NO 11**. Admit that you did not advise Robert Payne -- at any time after the execution of the agreement to sell the Building and prior to the filing of the Petition (approximately December 2015 through February 26, 2016) -- that Franchise Tax Board debt (in the approximate amount of $800) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 11:** Admit

**REQUEST FOR ADMISSION NO 12**. Admit that you did not advise Robert Payne -- prior to execution of the agreement to sell the Building -- that Franchise Tax Board debt (in the approximate amount of $800) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 12:** Admit

**REQUEST FOR ADMISSION NO 13**. Admit that you did not advise Robert Payne -- at any time after the execution of the agreement to sell the Building and prior to the filing of the Petition (approximately December 2015 through February 26, 2016)—that real property taxes (in the approximate amount of $39,309.53) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 13:** Admit

**REQUEST FOR ADMISSION NO 14**. Admit that you did not advise Robert Payne -- prior to execution of the agreement to sell the Building -- that real property taxes (in the approximate amount of $39,309.53) remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 14:** Admit

**REQUEST FOR ADMISSION NO 15**. Admit that you did not advise Robert Payne -- at any time after the execution of the agreement to sell the Building and prior to the filing of the Petition (approximately December 2015 through February 26, 2016) -- that rent paid by LaRiviere Grubman P.C. on the Building from October 2014 (in the approximate amount of $42,405.94) remained to be paid by any LaRiviere Claimant, or

to be reimbursed to any LaRiviere claimant.

**RESPONSE TO ADMISSION NO. 15:** Admit

Of course, Mr. LaRiviere, having charged some $80,000 on the line of credit, and having pocketed $100,000 from the proceeds of the sale of real property and another $65,000 of accumulated profits, wanted desperately to keep his former partner in the dark about the business affairs of the partnership.

Consequently, when he filed his petition, Debtor had no idea that his former partner had racked up these liabilities. When he filed his petition, he listed, in good faith, the debts he knew about.

Mr. LaRiviere:

Mr. LaRiviere's claim is based solely on a promissory note in the amount of $21,865.80, owed by LGP LLP to Mr. LaRiviere.

Again, as a preliminary matter, and without analyzing the items above, this claim suffers from the same two flaws set forth above:

First: It is a claim against LGP LLP, and not against Debtor, and pursuant to California Corporations Code §16306(c), a creditor of the LLP cannot make a direct claim against Debtor as a partner.

Second: To the extent Debtor is liable for any of this claim, it would be *pro-rata* based on his ownership of LLP. Since he held only a 45% interest in the LLP, any valid claims against him as a partner should be pro-rated.

But, more importantly, Mr. LaRiviere has admitted that the proceeds from sale of the building were enough to pay these debts. (Request For Admission set forth above.)

Finally, Mr. LaRiviere admits he never told Mr. Payne about this obligation. (Request For

FULLER LAW FIRM, PC
60 N. KEEBLE AVE
SAN JOSE, CA 95125
(408) 295-5595

Admission to Mr. LaRiviere, Set Number Three)

**REQUEST FOR ADMISSION NO 26**. Admit that you did not advise Robert Payne -- at any time after the execution of the agreement to sell the Building and prior to the filing of the Petition (approximately December 2015 through February 26, 2016) -- that the promissory note executed by LaRiviere, Grubman remained to be paid by any LaRiviere Claimant, or to be reimbursed to any LaRiviere claimant..

**RESPONSE TO ADMISSION NO. 26:** Admit

### IV. <u>CONCLUSION</u>

When he filed his petition, Mr. Payne believed, in good faith, that his former partner had more than enough funds to pay off all of the miscellaneous debts of LGP LLP. He completed his bankruptcy schedules accordingly.

Because the schedules were filed in good faith, Mr. Payne respectfully requests that the §109(e) objections be stricken.

Respectfully submitted,

Dated: July 19, 2017

                            THE FULLER LAW FIRM, PC

                            By:__*/s/Sam Taherian*__
                                Sam Taherian
                                Attorney for Debtors