Ralph P. Guenther [SBN 124245]
DOUGHERTY & GUENTHER, LLP
601 S. Main Street
Salinas, CA 93901
831.783.3440
rguenther@montereylaw.com

Attorneys for Creditors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re:

ROBERT W. PAYNE and
EILEEN P. TREMAIN

Debtors.

_____/

Case No. 16-50543-HLB

Chapter 13

**OBJECTING CREDITORS'
TRIAL BRIEF**

**Hearing Information**

Date:  August 1, 2017
Time:  9:00 a.m.
Judge:  Hon. Hannah L. Blumenstiel
        1000 South Main St., Rm 214
        Salinas, California

## I. INTRODUCTION

    F. David LaRiviere and Debtor were partners in LaRiviere, Grubman & Payne, LLP (the "LLP"), an intellectual property rights law firm in Monterey, California. In September 2014, Debtor abandoned the LLP, leaving Mr. LaRiviere solely responsible for the dissolution. One of the major LLP obligations was a $300,000+ line of credit in favor of Rabobank [Trial Exhibit 14] which was personally guaranteed by Mr. LaRiviere and Debtor. Mr. LaRiviere and Debtor also personally guaranteed two other loans [Trial Exhibits 28, 29, and 30] secured by a condominium occupied by

1

the LLP. As well, the Partnership Agreement [Trial Exhibit 27] executed by Debtor stated in pertinent part:

> 7.2  <u>Release From Liability to Third Parties</u>: No withdrawing partner shall be relieved of his or her liability to third parties by reason of withdrawal from the Firm except to the extent of Firm assets. In the event of a dissolution of the Firm, each then partner or former partner shall remain liable for obligations of the Firm incurred while such person was a partner in the Firm to the extent that the assets of the Firm are insufficient to satisfy such obligation. All partners, whether general or restricted, shall be individually liable in proportion to the balance in their capital accounts.

Debtors filed their Chapter 13 Bankruptcy Petition on February 26, 2016, shortly after receiving notice that Rabobank intended to file a lawsuit against Debtor related to the line of credit. Their Chapter 13 Plan [Trial Exhibit 26] provided for nothing to unsecured creditors, meaning that Mr. LaRiviere would remain personally liable for the entire Rabobank line of credit that was personally guaranteed by Debtor.

Debtors Schedule A/B [Trial Exhibit 1] listed a "possible claim against former law partner, F. David LaRiviere" as an asset with a value of $1.00 and a 50% interest in the LLP with a value of $0.50, but Debtors' Schedule E/F [Trial Exhibit 3] did not list F. David LaRiviere, LaRiviere, Grubman & Payne, LLP, or LaRiviere & Grubman, PC, as creditors.[1]

F. David LaRiviere and LaRiviere, Grubman & Payne, LLP, filed an Objection to Confirmation [Trial Exhibit 33] on April 14, 2016, alleging, *inter alia,* that Debtors did not qualify for Chapter 13 under 11 USC section 109(e) and that Debtors had filed their schedules in bad faith by failing to list F. David LaRiviere and the law partnership as creditors.[2] Trial is now scheduled on the limited issue of good faith under 11 U.S.C. §§ 1325(a)(3) and (a)(7).

---

[1] However, Debtors did list LaRiviere & Grubman, PC, as a notice recipient in connection with the claim in favor of Rabobank. They also included F. David LaRiviere and LaRiviere, Grubman & Payne, LLP, as codebtors in Schedule H in connection with the claim in favor of Rabobank.

[2] Creditors LaRiviere & Grubman, PC, LaRiviere, Grubman & Payne, LLP, and F. David LaRiviere filed three proofs of claim in this case:

    Claim 12-1    LaRiviere and Grubman, PC, for $117,060.22

    Claim 13-1    LaRiviere, Grubman and Payne, LLP, for $453,634.07

    Claim 14-1    F. David LaRiviere for $21,865.80

Debtors filed their objections to the referenced claims on September 6, 2017.

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

## II. STATEMENT OF FACTS

Debtor joined Mr. LaRiviere to form the LLP on August 1, 1994. The law firm specialized in intellectual property rights.

Debtor and Mr. LaRiviere executed a written Partnership Agreement for LLP [Trial Exhibit 27] on June 25, 1994.

In 1995, the law firm relocated to 19 Upper Ragsdale Drive, Suite 200, in Monterey to a condominium office owned by Justin Court Limited Partnership. Mr. LaRiviere and Debtor, in connection with the purchase of the law office condominium, each executed personal guaranties in favor of 1st Capital Bank [Trial Exhibits 29 and 30] and California Coastal Rural Development Corporation [Trial Exhibit 28], lenders secured by the condominium. The condominium was sold on January 21, 2016.

On January 20, 2016, Barry Smith, Esq., the attorney for Rabobank, sent an email [Trial Exhibit 20] to Debtor and Mr. LaRiviere threatening a lawsuit related to the Rabobank line of credit. In response, Debtors filed their Chapter 13 Petition on February 26, 2016. Debtors' Chapter 13 Plan [Trial Exhibit 26] provided for no payment to unsecured creditors.[3]

As a direct result of Debtors' decision to file for bankruptcy and in order to avoid the lawsuit threatened by Mr. Smith in his January 20, 2016, email, Mr. LaRiviere was forced to enter into a Settlement, Forbearance and Release Agreement [Trial Exhibit 22] with Rabobank. In connection with the agreement, Mr. LaRiviere was required to execute a Confession of Judgment [Trial Exhibit 23] in favor of Rabobank.

**A.     Debtors' Schedules**

Debtors' schedules filed on February 26, 2016, failed to schedule a claim in favor of Creditors in Schedule E/F [Trial Exhibit 3]. LaRiviere & Grubman, PC, was listed in Part 3 of Schedule E/F under "List Others to Be Notified About a Debt That You Already Listed." The listing referenced account number 0954 which was associated with the Rabobank line of credit [Trial Exhibit 14]. As well, F. David LaRiviere, Esq. and LaRiviere, Grubman & Payne LLP were listed

---

[3] Debtors' Second Amended Chapter 13 Plan provides for 7% payment to unsecured creditors.

3

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

Creditors' Trial Brief

on Schedule H as codebtors in connection with the Rabobank line of credit [Trial Exhibit 4].

On Schedule A/B [Trial Exhibit 1], Debtors listed a fifty percent interest in LaRiviere, Grubman & Payne, LLP, which was valued at $0.50. Debtors also listed a "Possible claim against former law partner, F. David LaRiviere" which was valued at $1.00.

**B.   Creditor Objection to Confirmation**

F. David LaRiviere and LaRiviere, Grubman and Payne, LLP, filed an Objection to Confirmation [Trial Exhibit 33] on April 14, 2016. The Objection asserted that Debtors' filed their case in bad faith and that they did not qualify for relief under 11 U.S.C. section 109(e).

## II.  LEGAL THEORIES

**A.   Debtors' Plan Has Not Been Filed In Good Faith.**

In order to be confirmed, a Chapter 13 plan must have been proposed in "good faith" and "not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "A good faith test [] should examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." *In re Chinichian* (9th Cir. 1986) 784 F2d 1440, 1444. Good faith is determined on a "case-by-case basis, taking into account the particular features of each Chapter 13 plan." *In re Goeb* (9th Cir. 1982) 675 F2d 1386, 1390.

To determine whether a plan is proposed in good faith, courts apply a "totality of the circumstances" test, taking in consideration:

- Whether the debtor misrepresented facts, unfairly manipulated the Bankruptcy Code or otherwise proposed the plan in an inequitable manner;
- The history of the debtor's filings and dismissals;
- Whether the debtor intended only to defeat state court litigation; and
- Whether the debtor's behavior was egregious.

*In re Welsh* (9th Cir. 2013) 711 F3d 1120, 1132 (adopting factors set forth in *In re Leavitt* (9th Cir. 1999) 171 F3d 1219, 1224.)

In deciding on good faith, "[t]he court is not obligated to count the four *Leavitt* factors as though they present some sort of a box-score but rather is to consider them all and weigh them in judging the 'totality of the circumstances.'" *In re Lehr* (Bankr. N.D. Cal 2012) 479 BR 90, 98.

4

Moreover, "[t]he bankruptcy court is not required to find that each [*Leavitt*] factor is satisfied or even to weigh each factor equally"; rather, "[t]he factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." *Khan v. Curry (In re Khan)* (9th Cir. BAP 2014) 523 BR 175, 185. As well, "neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor is affirmatively attempting to violate the law–malfeasance is not a prerequisite to bad faith." *Leavitt*, 171 F3d at 1224-25 (Quoting *In re Powers* (Bankr. CD Cal. 1991) 135 BR 980, 994. Here, a careful weighing of the *Leavitt* factors argues in favor of a finding of bad faith.

### 1. Debtors have misrepresented facts, unfairly manipulated the Bankruptcy and proposed their Plan in an inequitable manner.

When they filed their bankruptcy, Debtors were clearly aware of the claims by Mr. LaRiviere and the LLP. One has only to look at the December 30, 2014, letter [Trial Exhibit 18] from Mr. LaRiviere to Debtor to confirm that Debtor was on notice of these claims. As stated, Debtors' schedules [Trial Exhibit 1 through 6] failed to list either Mr. LaRiviere, the LLP or LaRiviere & Grubman, PC, as a creditor. To this day, Debtors have failed to amend their Schedule E/F to list any claims in favor of Mr. LaRiviere, the LLP, or LaRiviere & Grubman, PC. As stated in the Objection to Confirmation [Trial Exhibit 33], "the debtors have intentionally omitted thee objecting creditors in their list of scheduled debts in an attempt to artificially keep their [unsecured debt] limit within the confines of 11 U.S.C. § 109(e)."

In addition to Debtors' unexcused failure to even list these objecting creditors in Schedule E/F, they also misstated their past and projected tax liability in their Statement of Current Monthly Income [Trial Exhibit 9] and Schedule J [Trial Exhibit 6]. On line 16 of their Statement of Current Monthly Income [Trial Exhibit 9] Debtors took a $2,100.00 deduction for taxes. However, Debtors' 2015 tax returns [Trial Exhibit 24] reflect taxes for 2015 of only $14,096.00, or $1,175.00 per month. The tax returns also reflect that Debtors received a combined refund of $9,961.00. The refund should have been divided by 12 and the monthly income of $830.00 added to their Schedule I income. It was not. See, Trial Exhibit 5.

Debtors Schedule J [Trial Exhibit 6] also listed estimated income taxes of $2,100.00 per

Creditors' Trial Brief

month.  However, Debtors' Application for Automatic Extension of Time to File U.S. Individual Income Tax Return for 2016 [Trial Exhibit 25] reflects a projected zero amount owing for 2016 taxes.  It also reflects that Debtors made only $12,346.00 in estimated tax payments for 2016.  Debtors must have known that it would not be necessary for them to withhold $2,100.00 per month.  By doing so, not only did they misrepresent facts, they also unfairly manipulated the numbers to reduce their disposable income, to the detriment of their creditors.  It would also appear that Debtors are trying to hide this fact by seeking an extension of time to file their tax returns.

Debtors Chapter 13 Plan [Trial Exhibit 26] provided for direct payments to Patelco Credit Union and Bank of America on two loans secured by vehicles.  However, based on the claims filed by these creditors [Trial Exhibits 13 and 16], it appears that the Patelco Credit Union loan would have been paid in approximately 17 months and the Bank of America loan would have been paid in approximately 11 months.  Based on these facts, Debtors should have proposed increases to their plan payments in months 12 and 18 to reflect an increase in their disposable monthly income.[4]  By failing to do so, Debtors are unfairly manipulating the Bankruptcy and providing for the inequitable treatment of their creditors.

Debtors have also misstated their income.  In their Attachment to Schedule I [Trial Exhibit 5], Debtor lists "Business Expenses: LaRiviere, Grubman & Payne, LLP."  Of course, Debtor could not have incurred any business expenses for the LLP because he abandoned the LLP in September 2014!  Also, according to his 2015 tax returns [Trial Exhibit 24] Debtor was employed by Hoge Fenton Jones & Appel, Inc., and self-employed as Payne IP Law.  The only reference to the LLP was a loss of $3,729 which was reflected on the first page of the tax return and in Form 1040 Schedule E.

Debtors 2015 tax returns [Trial Exhibit 24] reflect taxable gross income from Payne IP Law was $82,400.00.  His expenses associated with the business were only $27,801.00 which is equal to

///

---

[4] It is an open question why the Chapter 13 Trustee would allow for direct payment on two loans when the term of each loan is less than the Applicable Commitment Period for the Plan. The Trustee normally requires payment to her "through the Chapter 13 Plan" so that she can be the disbursing agent and thus take her commission. Notwithstanding, Debtors cannot have it both ways. They either must propose for an increase in Play payments when the loans are paid or provide for payment through the Chapter 13 Trustee which would also result in an increase in disposable income for the benefit of unsecured creditors.

6

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

$2,317 per month.[5] Debtors' Statement of Current Monthly Income [Trial Exhibit 9] listed monthly business expenses of $3,795.00 per month, a difference of $1,478.00 per month.

Creditors intend to identify additional misrepresented facts at trial. However, even if creditors cannot identify one additional misrepresented fact, it appears that Debtors were playing "fast and loose" with the financial information provided to their creditors, the Chapter 13 Trustee and this Court.

Under similar facts, Courts have found bad faith where the debtor is not honest in disclosing assets, liabilities, income and/or expenses in the plan. See, for example, *In re Huerta* (Bankr. CD Cal. 1992) 137 BR 356, 376 (inaccuracies in debtors' budget, plan statements and other information demonstrating debtors' willingness to "play loose" with the facts).

**2. By filing their Chapter 13 Petition shortly after receiving a threatening email from Rabobank's counsel, Debtors intended only to defeat state court litigation.**

The timing of Debtors' Chapter 13 Petition leads to the conclusion that it was merely an attempt to defeat the threatened lawsuit by Rabobank.

On January 20, 2016, Barry Smith sent an email [Trial Exhibit 20] to Debtor and Mr. LaRiviere threatening a lawsuit in connection with the Rabobank line of credit personally guaranteed [Trial Exhibit 14] by Debtor and Mr. LaRiviere. His email stated in pertinent part:

> "Liability is Joint and Several. . . . Each of you is responsible for the entire amount of principal, interest, default interest, late fees, attorney's fees and costs. . . . [¶]On January 28th I will be filing suit against each of you and seeking a prejudgment writ of attachment. . . ."

In response Debtors filed their bankruptcy on February 26, 2016.

Debtors may argue that there were other reasons for the bankruptcy filing. For example, they listed a $10,371.33 priority claim in favor of the IRS [Trial Exhibit 3] for 2012 taxes. However, the IRS priority claim [Trial Exhibit 17] was filed for only $5,455.61. Curiously, it appears that Debtors had already entered into a payment plan with the IRS. Their Statement of Financial Affairs [Trial

---

[5] Debtor also took a $5,401 deduction for use of a home office which is a non-cash deduction and should not be used to further decrease Debtor's income from Payne IP Law.

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

Case: 16-50543   Doc# 87   Filed: 07/24/17   Entered: 07/24/17 18:47:40   Page 7 of 11

In re Payne, Case No. 16-50543 — Creditors' Trial Brief

Exhibit 8] reflected three $1,200.00 payments to the IRS for the months of November and December 2015, and January 2016. Presumably, Debtors were current on their payment plan with the IRS when they filed. As well, Debtors appeared to be current on their house payments, car payments and credit card payments.[6]

Because Debtor has taken the position that he owes no money to Mr. LaRiviere, the LLP or LaRiviere & Grubman, PC, he cannot now claim that his dispute with his former law partner precipitated his Chapter 13 bankruptcy. In fact, the only reasonable conclusion that can be drawn from these facts is that the threat of a lawsuit by Rabobank was the **only** reason Debtors filed for bankruptcy. See, *Eisen v. Curry (In re Eisen)* (9th Cir. 1994) 14 F3d 469, 470.

### 3. Debtors behavior was egregious.

Of course, Creditors believe Debtors' conduct was egregious. Debtor abandoned the LLP, leaving the dissolution to Mr. LaRiviere. When Rabobank threatened a lawsuit, Debtors filed for bankruptcy, leaving Mr. LaRiviere "holding the bag." Mr. LaRiviere is now obligated to Rabobank for entire balance owing on the line of credit. The Settlement, Forbearance and Release Agreement [Trial Exhibit 22] requires Mr. LaRiviere to pay Rabobank monthly installments of $2,291.11 and principal reduction payments of $10,000.00 every six months beginning in May 2019.

As discussed herein, Debtors have overstated their tax liabilities and secured debt payments by a significant amount. They have also understated their income. Taking these misrepresentations into account, Debtors could have easily funded half of the monthly installment to Rabobank. Instead, they avoided the litigation and left the obligation to Mr. LaRiviere. Mr. LaRiviere is over 80 years old. Instead of being able to consider retirement, he will instead be required to work until he drops in order to pay Debtor's half of the Rabobank line of credit. That is the "definition" of egregious.

///

///

---

[6] Debtors' Statement of Financial Affairs [Trial Exhibit 8] reflected monthly payments on their loans secured by their residence and to Bank of America on a credit card. Debtors' Chapter 13 Plan [Trial Exhibit 26] provided for direct payments to the loans secured by their residence and to the two lenders secured by their vehicles.

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440
Case: 16-50543   Doc# 87   Filed: 07/24/17   Entered: 07/24/17 18:47:40   Page 8 of 11

Creditors' Trial Brief

**B. Where There Is An Allegation Of Bad Faith, This Court Should Look Beyond Debtors' Schedules To Determine Debtors' Eligibility for Chapter 13; Liquidation of Creditors' Claims Is Not Required.**

Debtors confuse the issues to be decided by the upcoming evidentiary hearing. Debtors state in the concluding paragraph of their trial brief: "Because the schedules were filed in good faith, Mr. Payne respectfully requests that the § 109(e) objection be stricken." The question is not whether the schedules were filed in good faith, but whether "the plan has been proposed in good faith and not by any means forbidden by law" [11 U.S.C. § 1325(a)(3)] and whether "the action of the debtor in filing the petition was in good faith" [11 U.S.C. § 1325(a)(7)]. As discussed above, the determination of good faith depends on a case specific review of the facts and the application of those facts to the four factors discussed in *Leavitt*. Debtors do not discuss any of the four factors.

Instead, Debtors argue that Creditors' claims are overstated and the Mr. LaRiviere himself acted in bad faith in connection with the liquidation of the LLP[7]; as if this alone would support a finding of good faith on behalf of Debtors. Again as discussed herein, Creditors bad faith argument goes beyond Debtors' failure to list Creditors as a claimant in their bankruptcy schedules. Debtors schedules and related documents are riddled with misrepresentations. Moreover, Debtors' decision to file when confronted with a lawsuit by Rabobank is yet another compelling reason in support of a finding of bad faith. Finally, the fact that Debtors could have participated with Mr. LaRiviere in a work out of the Rabobank obligation provides support for a finding of egregiousness. For these reasons, Debtors' arguments are hollow and do not support a finding of good faith.

Debtors argue that this Court must determine eligibility for Chapter 13 based "the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." *Scovis v. Henrichsen (In re Scovis)* (9th Cir. 2001) 249 F.3d 975, 982. In contrast, Creditors assert [Trial Exhibit 33] that Debtors' schedules were not filed in good faith and further that the schedules were filed to circumvent a finding that Debtors did not qualify for Chapter 13. Specifically, Debtors failed to list any claim in favor of Creditors. Debtors' explanation for this miscue is that they offset their

---

[7] Debtors do not provide any explanation for Debtor's abandonment of the LLP, nor can they possibly appreciate the efforts made by Mr. LaRiviere to deal with the consequences of Debtor's decision to leave.

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

"Possible claim against former law partner, F. David LaRiviere " [Trial Exhibit 1] against any claims by Creditors. There was no reference to this "calculation" to be found in Debtors' schedules.

Debtors are correct in that, normally, eligibility under section 109(e) is based in the amount of debt reflected in a debtor's originally filed schedules, checking only to see if the schedules were prepared in good faith. *Id.* Nevertheless, it is well accepted that *Scovis* states a general rule and that a debtor's schedules remain the starting point, not the end of the court's eligibility inquiry. *See, e.g., In re Lantzy* (9th Cir. BAP 2010) 2010 WL 6259984 at *3 (in light of good faith objection to eligibility, the court may look to other evidence); *In re Nichols* (9th Cir. BAP 2007) 2007 WL 7541002 at *7 (citing *Scovis* for the proposition that when there is a good faith objection to eligibility, the court should look past the schedules to other evidence submitted); *In re Guastella* (9th Cir. BAP 2006) {Schedules are starting point but no dispositive; court may make limited inquiry outside of schedules in face of good faith eligibility objection); *In re Smith* (Bankr. D.N.H. 2005) 325 BR 498, 502 (although schedules are the "beginning point" in determining eligibility, when it appears that a debtor did nor exercise reasonable diligence or good faith in completing schedules, the court may look to other evidence). The recognition that scheduled debtors should not be accepted at face value when challenged makes sense. As one bankruptcy appellate panel explained, "[i]f the debtors' schedules were dispositive, then eligibility could be created by improper or incomplete scheduling of creditors." *In re Quintana* (9th Cir. BAP 1989) (affd, 915 F2d 513 (9th Cir. 1990) 107 BR 234, 238-39 n.6.

Here, as discussed, Debtors failed to list any claim in favor of Creditors. They did so in order to come under the unsecured debt limits for Chapter 13. There is ample case law support for a finding that the Court should not turn a "blind eye" to Debtors' willful manipulation of their schedules and other documents in connection with their Chapter 13 case.

Accordingly, even if Debtors can convince this Court that their Plan and the case was filed in good faith, the Court should still look beyond the clearly inaccurate schedules to determine whether Debtors qualify for Chapter 13.

///

///

10

In re Payne, Case No 16-50543-HLB Creditors' Trial Brief

Case: 16-50543    Doc# 87    Filed: 07/24/17    Entered: 07/24/17 18:47:40    Page 10 of 11

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

## IV. CONCLUSION

This Court should conclude that Debtors did not file their Chapter 13 case in bad faith. There is ample evidence to support this finding. Not only are the schedules and related document rife with misrepresentations, but the misinformation was calculated to allow Debtors to qualify for Chapter 13 Bankruptcy. Furthermore, these misrepresentations resulted in a significant under-reporting of disposable monthly income, again to the Debtors' benefit and to the extreme prejudice of their creditors. The timing of Debtors' decision to file, shortly after receiving a threat of a lawsuit from Rabobank, at a time when they were current with all of their other payment obligations, also supports a finding of bad faith. Finally, Debtor's callous disregard of his former law partner's age and inability to deal with the Rabobank line of credit supports a finding of egregiousness. All of these factors together support a finding of bad faith. As such, Creditors respectfully request that the Court issue and appropriate findings of bad faith and thereafter issue an order dismissing Debtors' Chapter 13 Case.

Dated: July 24, 2017          DOUGHERTY & GUENTHER, APC

*/s/ Ralph P. Guenther*
Ralph P. Guenther, Attorney for
Objecting Creditors

11

Case: 16-50543   Doc# 87   Filed: 07/24/17   Entered: 07/24/17 18:47:40   Page 11 of 11

DOUGHERTY & GUENTHER
601 S. Main Street
Salinas, CA 93901
831.783.3440

Creditors' Trial Brief